ORGAN *et al.* v. STEWART, appellant.

*Contract of sale — statute of frauds — Compromise.*

Defendant, being owner of three lots of wool, entered into negotiations with plaintiffs, which resulted in the oral sale of two lots known as the "York" wool and the "Gilmore" wool, and the conditional sale of the other lot known as the "Fowlerville" wool. The "York" and "Gilmore" lots were delivered by defendant, when a dispute arose between the parties in regard to the "Fowlerville" lot, defendant refusing to deliver it and plaintiffs refusing to pay for the wool already delivered. The parties then compromised their differences and defendant agreed to deliver the "Fowlerville" wool; and thereupon plaintiffs paid defendant the price of the other lots. *Held,* that the compromise being of doubtful and conflicting claims, was valid; that the payment made thereon must be deemed to have been made upon the whole contract and, therefore, that the agreement to deliver the "Fowlerville" wool was not void by the statute of frauds, and that defendant was liable for non-delivery of the "Fowlerville" wool.

APPEAL from a judgment in favor of the plaintiffs upon the report of a referee. The action was brought by Patrick Organ and John Farrell against Neil Stewart, for the non-delivery of a quantity of wool. The cause was referred to a referee who reported the following facts: The defendant, a resident of Livingston county, was the owner of three lots of wool, and in January 24, 1871, he entered into negotiations with the plaintiffs, copartners in business at Troy, N. Y., for the sale of the wool. The negotiations resulted in the parol sale of two lots known as the "York" wool and the "Gilmore" wool, and the conditional sale of the other lot known as the "Fowlerville" wool. The condition of the sale of the "Fowlerville" wool was such that if the plaintiff, Organ, and the defendant could agree upon the manner in which the wool should be shrunk, it was to be included in the sale and purchase on the same terms as the other

lots. The " York" and " Gilmore" wool was delivered according to agreement at Caledonia. Subsequently, a difference arose between plaintiff, Organ, and the defendant as to the shrinkage of the "Fowlerville" wool, and the defendant refused to deliver it; and plaintiff, Organ, refused to pay the price of the wool already delivered. Organ and the defendant afterward agreed that the "Fowlerville" wool should be delivered at the store of Henry Rankin, in Troy, to be assorted and shrunk by Rankin's assorters, and then delivered to plaintiffs. Thereupon the plaintiffs paid defendant $18,357.60, the price of the wool which had been already delivered. The "Fowlerville" wool was not delivered according to agreement.

The referee found, as conclusions of law, that the parol contract made January 24, 1871, was modified and extended by the subsequent agreement, and that the money paid thereupon by plaintiffs to defendant was paid upon the contract, as modified, as a part of the purchase price of the whole of the wool, and that the contract, so modified, was rendered valid and binding by such payment. Judgment was entered on the report in favor of plaintiffs. Defendant appealed to this court.

*Wood & Scott* and *S. Hand*, for appellant, argued that the contract was void. The payment of a claim actually due is no consideration for a contract. *Converse* v. *Kellogg*, 7 Barb. 590, 598; *Crosby* v. *Wood*, 6 N. Y. 369; *Hunt* v. *Bloomer,* 5 Duer, 202; *Van Allen* v. *Jones*, 10 Bosw. 369; *Gibson* v. *Renne*, 19 Wend. 389; *Bunge* v. *Koop*, 48 N. Y. 225; *Pabodie* v. *King*, 12 Johns. 426; *Bridgman* v. *Dean*, 7 Exch. 199. The contract cannot be supported on the ground that it was a compromise of a disputed claim. *Morey* v. *Town of Newfane*, 8 Barb. 645; *Thomas* v. *McDaniel*, 14 Johns. 185. The contract as to the Fowlerville wool was clearly void by the statute of frauds. *Weir* v. *Hill*, 2 Lans. 278; *Pierce* v. *Paine*, 28 Vt. 34; *Bartlett* v. *Wheeler*, 44 Barb. 164; *Harman* v. *Reeve*, 18 C. B. 587.

*Irving Browne*, for respondents, cited *Goss* v. *Lord Nugent*, 5 B. & A. 65; *Stead* v. *Dawber*, 10 A. & E. 57; *Cummings* v. *Arnold*, 3 Metc. 486; *Blanchard* v. *Trim*, 38 N. Y. 227; *Cuff* v. *Penn*, 1 M. & S. 21; *Fish* v. *Cottenet*, 44 N. Y. 542; *McKnight* v. *Dunlop*, 5 id. 537; *Bissell* v. *Balcom*, 39 id. 284; *Allis* v. *Read*, 45 id. 142; *Damon* v. *Osborn*, 1 Pick. 480; *Thompson* v. *Alger*, 12 Metc. 437.

BOCKES, J. At the time the parties met at Troy, serious matters of difference existed between them. The plaintiffs claimed that the original contract of sale embraced the Fowlerville wool, and they insisted upon its delivery, and refused to pay for the wool already delivered, unless their claim was acceded to, and the agreement performed on the part of the defendant according to its terms, as they asserted the contract to be. On the other hand, the defendant insisted that the contract did not embrace this lot of wool, and claimed pay for the wool delivered. Under this condition of affairs, the parties entered into a new or substituted agreement, embracing the Fowlerville wool, which was to be "handled" and delivered at Troy, all at the original contract price of forty-five cents per pound; and the plaintiffs were then to pay for the two lots already delivered. Thereupon the plaintiffs paid the defendant $18,357.60, the price of the wool already delivered; which payment, as the referee finds, was made upon the new or substituted contract "as part of the purchase price of the whole of the wool." The defendant then refused to deliver the Fowlerville wool, and the action is brought to recover damages therefor.

The contract was not in writing, and it is claimed on the part of the defendant, that it was void by the statute of frauds.

This position is based on the hypothesis that the original contract of sale did not embrace the Fowlerville wool, and that the payment made to the defendant was in satisfaction of the other wool already delivered; thus leaving the contract for the Fowlerville wool to rest in parol, with no part of the property delivered, and without payment of any part of the purchase-money.

This view of the case is, I think, unsound. It is at least questionable whether the defendant should not be held to be estopped from asserting, or claiming any advantage from, the former or original agreement, inasmuch as he accepted the plaintiffs' money on the new or substituted agreement, and in part payment of the entire purchase price agreed to be paid for all the wool by that contract agreed to be delivered. But be that as it may, there were substantial matters of difference between the parties at the time the new agreement was made, susceptible of being compromised, and proper to be adjusted and settled by them. There was a question whether the original contract did or did not include the Fowlerville wool. The plaintiff insisted that it did, and refused payment for any of the property until the defendant made delivery of that

lot according to the terms of the purchase as he claimed the contract to be. The Fowlerville wool was certainly considered in their first negotiation, for the parties commenced to "handle" it with a view to its delivery, as the plaintiffs claimed, pursuant to the original contract of sale, when a disagreement arose in regard to the "handling" of it, and delivery was refused. The defendant, on the other hand, denied all obligation to deliver this lot of wool — insisted that it was not embraced within the contract of sale, and demanded payment for what had been delivered. There is nothing in the case showing that these claims by the parties respectively, were not made in good faith, and under the full belief by each that the other was in the wrong in regard to the matters of disagreement. Their assertions and claims were not put forward evidently without any ground to support them as a ruse or fraud. Indeed, they respectively vindicated their views and claims by their own testimony on the trial of this case; and the fact that it was then decided that one was in error does not show that the compromise was without ground of support. At the time of the agreement at Troy, the claims of the respective parties as to the terms of the original contract of sale were, to say the least of them, doubtful, and it could only be determined which was right by actual trial, and then could only be decided on conflicting evidence. A compromise of a doubtful claim will be upheld, and when an action is brought upon such agreement of compromise, it is no defense to show that the claim was not a valid one. *Crans* v. *Hunter*, 28 N. Y. 389; *Russell* v. *Cook*, 3 Hill, 504. In the last case cited, COWEN, J., says: "In such case it matters not on which side the right ultimately turns out to be. The court will not look behind the compromise." In another case it was said, that any matter that may be litigated may be settled. There are numerous decisions to the same effect as the above. Now, it must not be understood that a *groundless claim* put forward without any show of right, — a mere pretense urged as a ruse or fraud, — can be deemed a *doubtful* claim. There must be a real and substantial matter of dispute and controversy. Such was this case, and only by a judicial examination and a decision on a conflict of evidence could the claims of the respective parties be determined. But this is not all of the case, for it appears on the face of the record that the defendant also had a claim against the plaintiff, for damages grown out of the original contract of sale,

which, of course, was covered and extinguished by the compromise effected by the new agreement.

This claim is set forth in his verified answer. Besides, if it be true as the defendant claimed, and still claims, that there was no ground for the pretense on the part of the plaintiffs, that the Fowlerville wool was embraced in the original contract of sale, and that he was entitled to demand and have payment for the wool actually delivered, then and in that case he had not, in fact, parted with his title to the wool delivered, and he might, then, at Troy, have reclaimed his property on refusal by plaintiffs to pay as they had agreed on delivery. According to the proof in this case, he had waived nothing, and was not barred the right of reclamation by the delivery under the expectation of payment according to the contract, which called for payment on delivery. He lost no time in seeking payment. If the wool was delivered on the faith of the promise to pay on delivery, and with the expectation that the promise would be fulfilled, the fact that the plaintiffs had immediately run it off to Troy would not prevent the defendant from obtaining reclamation of it, if payment was refused. In *Leven* v. *Smith*, 1 Denio, 571, the goods were sold to be paid for on delivery. JEWETT, J., says, " Payment and delivery were to have been simultaneous ; no credit was given, and there is no evidence that the delivery to the defendant was intended to be absolute, or that the condition of payment was waived ; and the mere handing over of the goods under the expectation of immediate payment did not constitute an absolute delivery. The defendant, after such delivery, held the goods in trust for the plaintiffs until payment was made or waived." See also *Fleeman* v. *McKean*, 25 Barb. 474 ; *Hays* v. *Currie*, 3 Sandf. Ch. 585 ; *Van Neste* v. *Conover*, 8 Barb. 509 ; *Smith* v. *Lynes*, 5 N. Y. 41 ; *Hammet* v. *Linneman*, 48 id. 399. The defendant, therefore, had not lost his right to the property, and could have reclaimed it at the time of entering into the new contract of sale, in case he was right in his position that the original agreement did not embrace the Fowlerville wool. This right was barred by the new contract and his acceptance of the sum of $18,357.60 thereon. Now, it is quite apparent that the new contract of sale was brought about by mutual concessions, and this constitutes the very essence of compromise. All points of difference and conflicting claims, including rights of property, were adjusted and settled by the new contract, in pursuance of which a

large amount of money was paid by the plaintiffs, and accepted by the defendant. In effect, the agreement at Troy, and the action of the parties under it amounted to a new contract of sale of the three lots of wool, with delivery of two lots, and payment down of the principal part of the purchase price. The agreement, therefore, became and was valid and binding on the parties.

The breach, by the defendant, is well found, and the referee, in so far as is made to appear, committed no error in awarding damages.

*Judgment affirmed.*